<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

PETER HOBSON,                         )
                                      )  Civil Action
              Plaintiff               )  No. 08-cv-05652
                                      )
         vs.                          )
                                      )
ST. LUKE'S HOSPITAL AND               )
HEALTH NETWORK,                       )
                                      )
              Defendant               )

                         *    *    *


APPEARANCES:

         DONALD P. RUSSO, ESQUIRE
              On behalf of Plaintiff

         DAVID M. STECKEL, ESQUIRE
         SCOTT C. HECKMAN, ESQUIRE
              On behalf of Defendant

                         *    *    *



                    <u>O P I N I O N</u>

JAMES KNOLL GARDNER,
United States District Judge

         This matter is before the court on Defendant's Motion

to Dismiss the Amended Complaint, or in the Alternative, for

Summary Judgment, which motion was filed November 6, 2009.[1]

Plaintiff filed a timely response to defendant's motion.[2]

Defendant's Reply Brief was filed January 12, 2010.

_____

         [1]    Accompanying defendant's motion to dismiss was a Memorandum of
Law in Support of Defendant's Motion to Dismiss the Amended Complaint, or in
the Alternative, for Summary Judgment, which memorandum was filed November 6,
2009.

         [2]    On November 18, 2009, Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the Amended Complaint was filed.

<u>SUMMARY OF DECISION</u>

Because plaintiff failed in his second attempt to sufficiently plead either his gender discrimination claim under Title VII of the Civil Rights Act of 1964 or his claim that he was improperly regarded as disabled in violation of the Americans with Disabilities Act, and therefore failed to sufficiently plead his claim under the Pennsylvania Human Relations Act, I grant defendant's motion to dismiss plaintiff's Amended Complaint and dismiss the Amended Complaint with prejudice.[3]

Because I grant defendant's motion to dismiss, I dismiss defendant's alternative motion for summary judgment as moot.

While mistaken in his belief that his Amended Complaint remedied the flaws of his original Complaint, plaintiff's claims were not frivolous, and his belief was neither unreasonable,

---

[3] Dismissal of the plaintiff's Amended Complaint without leave to amend is within the sound discretion of this court, "but outright refusal to grant the leave without any justifying reason...is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). When a district court dismisses a complaint pursuant to Rule 12(b)(6), "the court must permit a curative amendment unless such an amendment would be inequitable or futile." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 245 (3d Cir. 2008) (citing <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004)).

Here, amendment was permitted and, in fact, proved futile. Moreover, my September 28, 2009 Opinion accompanying the Order dismissing plaintiff's first Complaint identified insufficiencies in the pleading, yet plaintiff failed to remedy those insufficiencies. Given that (1) the first amendment of plaintiff's Complaint proved futile and (2) it would be inequitable to subject defendant to further expense of time and effort responding to a third iteration of plaintiff's Complaint, I find dismissal with prejudice appropriate.

without foundation, nor groundless; and because attorneys' fees to a prevailing Title VII defendant are only to be sparingly awarded, I deny defendant's request for leave to file a motion for attorneys' fees and costs.

My reasons and analysis are articulated below.

## JURISDICTION

This action is before the court on federal question jurisdiction. 28 U.S.C. § 1331. The court has supplemental jurisdiction over plaintiff's pendent state law claims. <u>See</u> 28 U.S.C. § 1367.

## VENUE

Venue is proper because plaintiff alleges that the facts and circumstances giving rise to the cause of action occurred in Lehigh County, Pennsylvania, which is in this judicial district. 28 U.S.C. §§ 118, 1391.

## AMENDED COMPLAINT

This case arises from the termination of plaintiff's employment from defendant St. Luke's Hospital and Health Network. Plaintiff contends that his employment was terminated because he was perceived by his employer as disabled, and therefore his termination for the alleged sexual harassment of a female nurse was a pretext. Plaintiff also alleges that he was discriminated against because of his male gender.

Plaintiff filed his Amended Complaint on October 21, 2009. The Amended Complaint contains three counts: Count I alleges a claim for violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[4] Count II alleges a claim for violation of Americans with Disabilities Act ("ADA").[5] Count III alleges that plaintiff's gender discrimination claim in Count I and disability discrimination claim in Count II each constitute a violation of the Pennsylvania Human Relations Act ("PHRA").[6]

STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A 12(b)(6) motion requires the court to examine the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings. Sands v. McCormick, 502 F.3d 263, 268 (3d. Cir. 2008).

---

[4]    42 U.S.C. §§ 2000e to 2000e-17.

[5]    42 U.S.C. §§ 12101 to 12213.

[6]    Act of October 27, 1955, P.L. 744, No. 222, §§ 1-13, as amended, 43 P.S. §§ 951-963.

Except as provided in Federal Rule of Civil
Procedure 9, a complaint is sufficient if it complies with
Rule 8(a)(2), which requires "a short and plain statement of the
claim showing that the pleader is entitled to relief."
Fed.R.Civ.P. 8(a)(2). Rule 8(a)(2) "[does] not require
heightened fact pleading of specifics, but only enough facts to
state a claim to relief that is plausible on its face." Twombly,
550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[7]

In determining whether a plaintiff's complaint is
sufficient, the court must "accept all factual allegations as
true, construe the complaint in the light most favorable to the
plaintiff, and determine whether, under any reasonable reading,
the plaintiff may be entitled to relief." Fowler, 578 F.3d at
210 (citing Phillips v. County of Allegheny, 515 F.3d 224, 233
(3d Cir. 2008)).

Although "conclusory or bare-bones allegations will
[not] survive a motion to dismiss," Fowler, 578 F.3d at 210, "a
complaint may not be dismissed merely because it appears unlikely

---

[7]     The Supreme Court's Opinion in Ashcroft v. Iqbal, __ U.S. __, __,
129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the
"facial plausibility" pleading standard set forth in Twombly applies to all
civil suits in the federal courts. Fowler v. UPMC Shadyside, 578 F.3d 203,
210 (3d Cir. 2009). This showing of facial plausibility then "allows the
court to draw the reasonable inference that the defendant is liable for the
misconduct alleged," and that the plaintiff is entitled to relief. Fowler,
578 F.3d at 210 (quoting Iqbal, __ U.S. at __, 129 S.Ct. at 1949, 173 L.Ed.2d
at 884). As the Supreme Court explained in Iqbal, "[t]he plausibility
standard is not akin to a 'probability requirement,' but it asks for more than
a sheer possibility that the defendant acted unlawfully." Iqbal,
 __ U.S. at __, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

that the plaintiff can prove those facts or will ultimately prevail on the merits." <u>Phillips</u>, 515 F.3d at 231. Nonetheless, to survive a 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. <u>Fowler</u>, 578 F.3d at 210. Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. <u>Id.</u> at 210-211. Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." <u>Id.</u> at 211 (quoting <u>Iqbal</u>, __ U.S. at __, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." <u>Iqbal</u>, __ U.S. at __, 129 S.Ct. at 1949-1950, 178 L.Ed.2d at 884-885. A well-pleaded complaint may not be dismissed simply because "it

strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

PROCEDURAL HISTORY

This action commenced on October 15, 2008 when plaintiff Peter Hobson filed a Praecipe for Writ of Summons against defendant St. Luke's Hospital and Health Network in the Court of Common Pleas of Lehigh County, Pennsylvania, as civil action number 4966 of 2008. Defendant filed a Praecipe for Rule to File a Complaint. A Rule to File a Complaint was issued and subsequently served upon plaintiff's counsel.

On November 5, 2008 plaintiff filed a Complaint in state court, which was subsequently served on defendant. On December 5, 2008 defendant removed the case to the United States District Court for the Eastern District of Pennsylvania based on federal question jurisdiction.

On December 12, 2008 defendant filed Defendant's Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment.

On September 28, 2009, I issued an Order and Opinion granting defendant's motion to dismiss plaintiff's Complaint and dismissing plaintiff's Complaint without prejudice for plaintiff to file a more specific Amended Complaint consistent with that

Opinion.  The Order and Opinion dismissed as moot defendant's alternative motion for summary judgment and denied defendant's motion for attorney's fees and costs.

On October 21, 2009, plaintiff filed his Amended Complaint.  On November 6, 2009, Defendant's Motion to Dismiss Plaintiff's Amended Complaint and, in the Alternative, for Summary Judgment was filed, which motion is before the court for disposition.

<u>FACTS</u>

Accepting as true all of the well-pled facts in plaintiff's Amended Complaint, and drawing all reasonable inferences in favor of plaintiff as the non-moving party, which I am required to do under the above standard of review, the pertinent facts are as follows.

Plaintiff Peter Hobson was employed by defendant St. Luke's Hospital and Health Network as a paramedic from March 1, 2005 until his termination on May 25, 2007 for allegations of sexual harassment of Cindy Stettner, a nurse at St. Luke's Bethlehem, Pennsylvania, campus.[8]

Plaintiff was qualified for the position, and he always received good performance appraisals and regular salary increases.  His Performance Evaluations for 2006 and 2007 were

---

[8]    Amended Complaint ¶¶ 1-4, 28.

rated as excellent with no negative comments about his performance.[9]

In July 2005 plaintiff's co-workers, Emergency Room Technician Maryanne Matey and paramedic Steven Dutt told plaintiff that Nurse Stettner was interested in meeting plaintiff and wanted to know if he were available.[10] Shortly thereafter, Nurse Stettner introduced herself to plaintiff inside the hospital emergency room, told plaintiff that she drives a Mercedes Benz and was buying a home in the west end of Allentown, Pennsylvania.[11]

Plaintiff was cordial to Ms. Stettner, but did not pursue a relationship.[12] In August 2005 Ms. Matey told plaintiff that Ms. Stettner was still interested in seeing where things could go with him.[13]

Between August 2005 and December 2005 plaintiff made no further attempts to converse with Nurse Stettner. During this time other Registered Nurses and hospital registration personnel made it difficult for plaintiff to properly perform his job

---

[9]    Amended Complaint ¶¶ 5-7.

[10]   Amended Complaint ¶¶ 8-11.

[11]   Amended Complaint ¶¶ 12-13.

[12]   Amended Complaint ¶ 14.

[13]   Amended Complaint ¶ 15.

duties.  The lack of cooperation and hostility made it difficult for plaintiff to do his job.[14]

On March 14, 2006 plaintiff sent a bouquet of flowers to Ms. Stettner as an apology because he felt he hurt her feelings.[15]

Between May 2006 and February 2007 plaintiff had no contact with Nurse Stettner because he believed she had emotional problems.  He intentionally avoided her, and applied for other jobs at the hospital that would take him away from the emergency room.[16]

After February 2007 plaintiff and Ms. Stettner were able to be cordial to one another.  On April 22, 2007 plaintiff left his business card on the windshield of Ms. Stettner's car in the hospital parking lot.  The note included a compliment on how Ms. Stettner was dressed that day.  She accepted the compliment and told plaintiff, "You're a very flattering person."[17]

On May 13, 2007 plaintiff tried to explain to Nurse Stettner that he never intended to hurt her feelings and was sorry if his actions caused her any hurt.  She was reluctant to listen to him at that time.  On May 20, 2007 plaintiff left a

---

[14]    Amended Complaint ¶¶ 16-18.

[15]    Amended Complaint ¶ 19.

[16]    Amended Complaint ¶ 20.

[17]    Amended Complaint ¶¶ 21-22.

note with a blank check for Ms. Stettner. The check was intended for her to give it to a charity.[18]

During the evening of May 20, 2007 plaintiff received a phone call from a police officer who asked plaintiff to leave the nurse alone.[19]

On May 22, 2007 plaintiff was questioned by Andrew Seidel, Connie Koch and Kermit Gorr, administrators at St. Luke's Hospital. Following their questioning, Ms. Koch and Mr. Gorr requested that plaintiff immediately resign, or face suspension with the intent to terminate. Plaintiff refused to resign.[20]

Ms. Koch told plaintiff that he was obsessed with Ms. Stettner and accused him of having a mental disability. Ms. Koch gave plaintiff documentation to seek assistance with the hospital's employee assistance program.[21] During these interactions, Ms. Koch stated to plaintiff that "he had an obsession problem which was a serious mental illness and he should seek help."[22]

After his termination on May 25, 2007 for allegations of sexual harassment, plaintiff filed an administrative claim

---

[18]    Amended Complaint ¶¶ 23-24.

[19]    Amended Complaint ¶ 25.

[20]    Amended Complaint ¶ 26.

[21]    Amended Complaint ¶ 27.

[22]    Amended Complaint ¶ 50.

with the Equal Employment Opportunity Commission ("EEOC") and with the Pennsylvania Human Relations Commission ("PHRC").[23]

Plaintiff signed his initial Charge of Discrimination on November 9, 2007 and sent it to the EEOC on November 9, 2007. His request to dual-file with the PHRC was signed by plaintiff and submitted to the EEOC for dual-filing on November 9, 2007.[24]

## DISCUSSION

### Gender Discrimination

Count I of Plaintiff's Amended Complaint asserts a claim for gender discrimination in violation of Title VII. I dismissed Plaintiff's original Complaint with leave to re-file in the Order and Opinion filed September 28, 2009.

To state a prima facie case of gender discrimination, plaintiff must plead sufficient facts to show or support a reasonable inference that he "(1) is a member of a protected class; (2) was qualified for the position [he] held; (3) was fired from that position; and (4) suffered adverse action under circumstances that give rise to an inference of discrimination." Johnson v. St. Luke's Hospital, 307 Fed.Appx. 670, 671-672 (3d Cir. 2009) (citing Jones v. School District of Philadelphia, 198 F.3d 403, 410-411 (3d Cir. 1999)); see Sarullo v. U.S. Postal Service, 352 F.3d 789, 797 (3d Cir. 2003);

---

[23]     Amended Complaint ¶¶ 28-29.

[24]     Amended Complaint ¶¶ 30,32.

Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 357 (3d Cir. 1999). Plaintiff's identification of a similarly-situated individual outside of the protected class who engaged in the same conduct as plaintiff but was treated more favorable may give rise to an inference of unlawful discrimination. Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d Cir. 1998)(citing Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 215 (1981)); see also Vernon v. A&L Motors, 2010 U.S.App. LEXIS 10728, at *6-7 (3d Cir. 2010)(citing Pivirotto, 191 F.3d at 358-359).

The prima facie case in a gender discrimination action is "highly factually dependent[,] and plaintiffs need not point to different treatment for similarly situated employees in every case," though facts suggesting such different treatment are "highly probative" of discrimination. Abbasi v. SmithKline Beecham Corp., 2010 WL 1246316, at *5 (E.D.Pa. Mar. 25, 2010) (Pollak, J)(citing Sarullo, 352 F.3d at 798 n.7).

Ultimately, the "central focus" of the prima facie case of gender discrimination "is always whether the employer is treating 'some people less favorably than others because of their...sex....'" Sarullo, 352 F.3d at 798 (quoting Pivirotto, 191 F.3d at 352).

Discussing what is required for employees to be considered "similarly situated," the United States Court of

Appeals for the Third Circuit recently noted that "while 'similarly situated' does not mean identically situated, the plaintiff [and any comparators] must nevertheless be similar in 'all relevant respects.'" Opsatnik v. Norfolk Southern Corp., 335 Fed.Appx. 220, 222-223 (3d Cir. 2009)(quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)).

Whether a particular fact or circumstance is relevant for purposes of a "similarly situated" analysis must be determined by the context of each case. Houston v. Easton Area School District, 355 Fed.Appx. 651, 654 (3d Cir. 2009). For instance,

> [i]n disciplinary cases or in the context of personnel actions...the relevant factors often include a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."

Id. (quoting Radue v. Kimberly-Clark Corporation, 219 F.3d 612, 617-618 (7th Cir. 2000)).

In order for employees to be considered "similarly situated," the relevant aspects of their employment situation must be "nearly identical" to those of the co-workers that plaintiff alleges were treated more favorably. Solomon v. Philadelphia Newspapers, Inc., 2008 WL 2221856, at *15 (E.D.Pa. May 21, 2008)(Giles, J.).

Facts supporting a reasonable inference that plaintiff was treated differently than similarly situated individuals outside of a plaintiff's protected class may satisfy the fourth element of a plaintiff's claim and prevent dismissal on that ground.  However, even if a plaintiff does not plead facts supporting an inference of differential treatment of similarly situated individuals outside the plaintiff's protective class, the plaintiff "can still present a prima facie case provided that [he] can point to facts tending to establish that [he] suffered an adverse employment action under circumstances giving rise to an inference of discrimination."  Abbasi, 2010 WL 1246316, at *5. Plaintiff here has done neither.

In my Opinion on defendant's original motion to dismiss, I noted that "more specificity concerning Plaintiff's job duties as a paramedic" was required to permit the court to both assess whether more favorably treated female employees were similarly situated to the plaintiff, and give defendant sufficient notice of the claims against it.[25]  Such additional specificity was not provided.

A comparison of Plaintiff's gender discrimination claim in his original Complaint and his Amended Complaint reveals the

_____

[25]     In my Opinion, filed September 28, 2009, at pages 10-11, I noted that to survive a motion to dismiss in a Title VII gender discrimination claim, a male plaintiff must demonstrate through proper factual pleading that he was treated less favorably than similarly situated female employees. Gautney v. Amerigas Propane, Inc., 107 F.Supp.2d 634, 641 (E.D.Pa. 2000) (quoting EEOC v. Metal Service Company, 892 F.2d 341, 347 (3d Cir. 1990)).

addition of four one-sentence paragraphs to the Amended

Complaint.[26]  Those paragraphs state:

> 36.  Plaintiff was treated differently from a
> female employee because he was never permitted to
> tell his side of the story regarding his contact
> with Nurse Stettner.

> 37.  Plaintiff had heard from another employee
> that Stettner was interested in him, but he was
> never afforded the opportunity to meet with the
> Human Relations Department to share this
> information.

> 38.  During the entire course of events, Stettner,
> the female employee who had started the problem in
> the first instance, was given the benefit of every
> doubt while Plaintiff on the other hand was
> accorded the harshest form of punishment.

> 39.  The Plaintiff believes, and therefore avers,
> that female employees were treated more fairly by
> the Defendant.[27]

> 40.  At the time Plaintiff was told that he would
> either have to resign or be terminated by [Nurse
> Supervisor] Koch.[28]

These additional averments do not salvage plaintiff's

gender discrimination claim.  Despite the opportunity given

plaintiff in my prior Opinion, plaintiff failed to provide

additional factual assertions showing how he and Nurse Stettner-

---

[26]     Paragraphs 36, 37, 38 and 40 were added to the Amended Complaint.
Compare Complaint ¶¶ 1-38 with Amended Complaint ¶¶ 1-42.

[27]     The identical averment appeared as paragraph 36 in Plaintiff's
original Complaint.  See Complaint ¶ 36.

[28]     Amended Complaint ¶¶ 36-40.

-or any other female employee of defendant for that matter- -were
similarly situated but differently treated. See <u>Gautney</u>,
107 F.Supp.2d at 641. For example, plaintiff has not pled facts
supporting a reasonable inference that he filed a sexual
harassment complaint (or any other complaint) with management
against Nurse Stettner (or any other of defendant's female
employees) and that his complaint was either rejected or ignored
while Nurse Stettner's (or another female employee's) complaint
was pursued.

Moreover, plaintiff pled no facts showing that any past
harassment complaints against Nurse Stettner, if any were filed,
or any other female employee were handled differently than the
claim against plaintiff. Furthermore, plaintiff has not pled
sufficient facts regarding his and Nurse Stettner's employment
duties, the supervisors to whom they reported, or other work-
related circumstances to support a reasonable inference that they
were similarly situated. Such facts, if pled, may have satisfied
plaintiff's prima facie obligations under the <u>Twombly</u> standard.

While plaintiff is not required to satisfy the fourth
element of his Title VII prima facie case by showing more
favorable treatment of similarly situated individuals outside the
protected class, plaintiff also failed to plead other facts
sufficient to show that he suffered an adverse employment action
under circumstances giving rise to an inference of unlawful

discrimination.  See Johnson, 307 Fed.Appx. at 670-671 (citing Jones, 198 F.3d at 410-411); Abbasi, 2010 WL 1246316, at *5 (same).

I conclude that plaintiff's averments that his employment was terminated two days after he was questioned by hospital administrators about an allegation of sexual harassment of a nurse and five days after receiving a call from a police officer requesting plaintiff to leave the nurse alone are insufficient to give rise to a reasonable inference that plaintiff was fired because he is a male.  Plaintiff's gender is not reasonably implicated as the cause of the phone call from the police, the plaintiff's questioning by the hospital administrators, or his ultimate termination.

Plaintiff also avers that he was treated unfairly because he was never permitted to tell his side of the story,[29] and because he was never afforded the opportunity to meet with the Human Resources Department to tell them that he heard from another employee that Nurse Stettner was interested in him.[30] However, plaintiff does not suggest that he requested such opportunities, or attempted to share such information, and was denied.

---

[29]     Amended Complaint ¶ 36.

[30]     Amended Complaint ¶ 37.

Moreover, plaintiff states that he was questioned by several administrators at St. Luke's on May 22, 2007, and that only after their questioning was his employment terminated.[31] He offers no explanation why this did not provide him an opportunity to present his account of the matter, or that he attempted to do so and was rebuffed by the administrators.

Finally, the addition of plaintiff's conclusionary assertion that Nurse Stettner received "the benefit of every doubt" while he "was accorded the harshest form of punishment,"[32] provides no more specificity- -and thus no more assistance to the court- -than plaintiff's initial assertion that "female employees were treated more fairly by the Defendant."[33]

Plaintiff also argues that "as the Third Circuit emphasized...a plaintiff need not plead evidence" to survive a motion to dismiss.  Moreover, plaintiff argues that Nurse Stettner, "the female who complained about Plaintiff's behavior, is in reality the only 'comparison' that needs to be alleged at this stage of the proceeding."[34]  In support of these arguments,

---

[31]     Amended Complaint ¶ 26.

[32]     Amended Complaint ¶ 38.

[33]     Amended Complaint ¶ 39; see Complaint ¶ 36.

[34]     Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Amended Complaint ("Plaintiff's Brief") at page 5.

plaintiff refers to the Third Circuit's Opinion in <u>Fowler</u>, <u>supra</u>, which plaintiff excerpts at length in his brief.[35]

Plaintiff properly relies on <u>Fowler</u> for the Third Circuit construction of the pleading standard established by the United States Supreme Court in <u>Twombly</u>, and further explained in <u>Iqbal</u>.  See <u>Fowler</u>, 578 F.3d at 210-211.  However, in addition to relying on <u>Fowler</u> for the applicable pleading standard, plaintiff also cites <u>Fowler</u> in support of his assertion that plaintiff need not plead evidence.[36]  While plaintiff is correct that he need not plead evidence, he certainly must "set out 'sufficient factual matter' to show that the claim is facially plausible." <u>Fowler</u>, 578 F.3d at 210 (quoting <u>Iqbal</u>, __ U.S. at __, 129 S.Ct. at 1948-1949, 173 L.Ed.2d at 883-884).

In <u>Fowler</u>, the Third Circuit vacated the district court's Order dismissing the plaintiff's case and remanded the matter for further consideration consistent with the Court's interpretation of the proper pleading standard under <u>Twombly</u> and <u>Iqbal</u>.  See <u>Fowler</u>, 578 F.3d at 214.  In doing so, the Third Circuit noted the various elements of the claims asserted by the plaintiff and was able to match each necessary element of the

---

[35]    Plaintiff's Brief at pages 2-3

[36]    Plaintiff's Brief at page 5.

plaintiff's claims with factual matter in the complaint.
See Fowler, 578 F.3d at 212. As noted above, I am unable to do
the same with plaintiff's Amended Complaint in this case.

Plaintiff's Amended Complaint does not contain facts
alleging that defendant hospital failed to adequately investigate
Nurse Stettner's sexual harassment complaint or that defendant
engaged in gender stereotyping in assessing Nurse Stettner's
harassment complaint. Nonetheless, in his brief, plaintiff
asserts that "employers may not act precipitously or based upon
stereotypes" when dealing with sexual harassment complaints.[37]
Despite plaintiff's lengthy summary of Sassaman v. Gamache,
566 F.3d 307 (2d Cir. 2009), that case does not advance
plaintiff's gender discrimination argument.

Sassaman is distinguishable because of both the nature
of the gender discrimination claim asserted and the quantity and
quality of facts included in plaintiff's complaint. In Sassaman,
the Second Circuit considered "whether a reasonable jury could
infer discrimination based on sex stereotyping in light of
[plaintiff] Sassaman's evidence that his supervisor[, defendant
David Gamache,] believed that men have a propensity to commit
sexual harassment and defendants' arguable failure to investigate
properly the charges of sexual harassment lodged against
Sassaman." Id. at 309.

---

[37]     Plaintiff's Brief at page 3.

Defendant hospital correctly distinguishes the instant case from Sassaman in its reply brief:[38] unlike plaintiff Hobson's Complaint, the complaint in Sassaman provided factual support for plaintiff Sassaman's assertion of gender stereotyping by his supervisor, defendant Gamache. Id. at 310-312.[39] Specifically, Mr. Sassaman averred that his supervisor, defendant Gamache stated, "you probably did what [Michelle Brandt] said you did because you're male[.]" Id. at 311.

Here, by comparison, plaintiff Hobson neither raised discriminatory gender stereotyping expressly nor through pleading facts, like those present in Sassaman, in his Amended Complaint to support a reasonable inference that defendant engaged in prohibited gender stereotyping.[40]

Given plaintiff's failure to remedy the defects in his pleadings and his failure to plead sufficient facts to support a

---

[38]     Defendant's Reply Brief to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Amended Complaint ("Defendant's Reply Brief") at page 2.

[39]     Michelle Brandt, one of Mr. Sassaman's co-workers, had previously lodged a complaint with David Gamache- -Mr. Sassaman's supervisor- -alleging that Mr. Sassaman was stalking and harassing her. Ms. Brandt's complaint ultimately led to Mr. Sassaman's resignation in the face of the choice- -offered by defendant Gamache- -to either resign of be fired. Sassaman, 566 F.3d 307 at 310-311.

[40]     Plaintiff acknowledged the distinguishing facts of Sassaman in his own brief: "According to [plaintiff] Sassaman, [defendant] Gamache defended his request [that Mr. Sassaman resign] by stating, 'I really didn't have any choice, [she] knows a lot of attorneys; I'm afraid she'll sue me. And besides, you probably did what she said you did because you're a male and nobody would believe you anyway.'" Plaintiff's Brief at page 4 (quoting Sassaman, 566 F.3d at 311).

reasonable inference that he was terminated because he is male,[41]
I grant defendant's motion to dismiss and dismiss with prejudice
plaintiff's gender discrimination claim under Title VII.

### Disability Discrimination

Count II of plaintiff's Amended Complaint asserts a
claim for violation of the Americans with Disabilities Act.
Defendant contends that plaintiff has not established a prima
facie case of disability discrimination under the ADA.

To establish a prima facie case of discrimination, a
plaintiff must show that he: (1) is disabled within the meaning
of the ADA; (2) is otherwise qualified for the job, with or
without reasonable accommodations; and (3) was subjected to an
adverse employment decision as a result of discrimination.
Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010)
(citing Taylor v. Phoenixville School District, 184 F.3d 296, 306
(3d Cir. 1999)).

---

[41]   As discussed above, plaintiff's Complaint fails to plead
sufficient facts to support a prima facie case of gender discrimination.
However, plaintiff also avers that "the reason given for his discharge was
pretextual."  Complaint ¶ 41.  Plaintiff's Brief contains no discussion of the
"pretextual" averment whatsoever.  Plaintiff's Brief at pages 1-9.

As I stated in my previous Opinion, the "pretextual" averment is a
conclusory recitation of the Title VII standard and is insufficient to satisfy
the Twombly pleading standard.  September 28, 2009 Opinion of the undersigned
at 11.  Moreover, under the burden-shifting analysis for Title VII claims,
defendant hospital is only required to show a non-discriminatory reason for
firing plaintiff if plaintiff pleads facts sufficient to establish his prima
facie case.  See Burdine, 450 U.S. at 252-256, 101 S.Ct. at 1093-1096,
67 L.Ed.2d at 215-218 (1981) (citing, inter alia, McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 802-805, 93 S.Ct. 1817, 1824-1826 , 36 L.Ed.2d 668,
677-679 (1973)).  Because plaintiff fails to plead sufficient facts to state a
prima facie case, his conclusory assertion that defendant hospital's reason
for firing him was "pretextual" has no impact on the outcome of this case.
Complaint ¶ 41.

An individual is "disabled" if he has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." Sulima, 602 F.3d at 185 (citing 42 U.S.C. § 12102(2)). "Working" is a major life activity under the ADA. 29 C.F.R. § 1630.2(i); Sulima, 602 F.3d at 185.

An "impairment," for the purposes of the ADA, is any "physiological disorder, or condition...affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." Sulima, 602 F.3d at 185 (quoting 29 C.F.R. § 1630.2(h)(1) (2006)) (internal quotations omitted).

A "substantial limitation" of a major life activity exists when "an individual is unable to perform it or is '[s]ignificantly restricted as to the condition, manner or duration' under which [the major life activity] is performed, as compared to an average person in the general population." Sulima, 602 F.3d at 185 (quoting 29 C.F.R. § 1630.2(j)(1)).

EEOC regulations require the consideration of three factors when determining if a substantial limitation exists: (1) the "nature and severity of the impairment"; (2) the "duration or expected duration of the impairment"; and

(3) the actual or expected "permanent or long term impact" resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

By contrast, a nonpermanent or temporary condition cannot be a substantial impairment under the ADA. Sulima, 602 F.3d at 185 (citing Williams v. Philadelphia Housing Authority, 380 F.3d 751, 765 (3d Cir. 2004)).

To prevail on a "regarded as" claim under the ADA, a plaintiff must show that the employer either mistakenly believed that the employee has a physical impairment that substantially limits one or more major life activities or mistakenly believed that an actual non-limiting impairment substantially limits one or more major life activities. Sulima, 602 F.3d at 188 (citing Wilson v. MVM, Inc., 475 F.3d 166, 179 (3d Cir. 2007)); Tice v. Center Area Transportation Authority, 247 F.3d 506, 514 (3d Cir. 2001).

Concerning the major life activity of working, the term "substantially limits" means "significantly restricted in the ability to perform either a broad class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training." 29 C.F.R. § 1630.2(j)(3)(I); see also Mendez v. Pilgrim's Pride Corp., 2005 WL 2175180, at *5 (E.D.Pa. Aug. 25, 2005) (Gardner, J.).

Plaintiff argues that the ADA Amendments Act of 2008 ("ADAAA")[42] broadened the statutory definition of when an employee is regarded as disabled, and that this broader definition should guide this court toward denying defendant's motion to dismiss.[43]

Defendant correctly responds that the ADAAA was not intended to apply retroactively and that the amendments are thus inapplicable to the facts of this case. See Johnson v. Amtrak, 2009 WL 1845226, at *6 n.3 (E.D.Pa. June 26, 2009)(Schiller, J.); see also Pinegar v. Shinseki, 2010 WL 891700, at *1 n.2 (M.D.Pa. Mar. 10, 2010)(Connor, J.).

Prior cases involving requests by an employer that an employee undergo a medical evaluation provide a rough analog to the facts of plaintiff's Amended Complaint. In Tice, supra, the Third Circuit found that the plaintiff-employee, Randy L. Tice, was not regarded as disabled. 247 F.3d at 516. Plaintiff Tice was on medical leave and scheduled for back surgery when he informed his employer that he had cancelled the surgery and wanted to return to work. 247 F.3d at 510.

---

[42] Plaintiff cites several cases discussing the ADAAA, but does not direct the court to any particular provision of the ADAAA itself. Plaintiff's Brief at pages 7-8. I presume plaintiff is relying specifically on the section of the ADAAA amending the definition of "Regarded as having such an impairment." ADA Amendments Act of 2008, Pub.L. No. 110-325, sec. 4(a), § 3(3), 122 Stat. 3553, 3555 (codified as amended at 42 U.S.C. § 12102 (2009)).

[43] Plaintiff's Brief at pages 7-8.

Mr. Tice had a note from his doctor stating that he could return to driving if he were given an air-ride seat and proper lumbar support. However, the note did not comment on the safety of his return or what, if any, risk he posed to himself or his passengers. Plaintiff's employer told him he would not be permitted to return to work without submitting to an independent medical examination, thus effectively mandating the examination. 247 F.3d at 510.

Plaintiff Tice argued that his employer's request that he submit to a medical examination before returning to work after a back injury was sufficient to establish that his employer regarded him as being disabled. 247 F.3d at 513. The Third Circuit Court of Appeals stated that for the plaintiff to use his employer's request for an independent medical examination to establish that the employer "regarded" him as substantially limited in the major life activity of working, he must aver that the request evinced a belief that the plaintiff was unable to work in a "broad class of jobs." 247 F.3d at 516.

Furthermore, the Third Circuit noted that plaintiff Tice failed even to attempt to show that his employer believed that he was unable to work in a broad class of jobs. Moreover, Mr. Tice explicitly argued in his briefs that his employer believed his impairment precluded him from working only as a bus driver, Id., essentially conceding that his employer did not

regard him as being substantially limited in the major life activity of working.

The United States Court of Appeals for the Eighth Circuit reached a similar conclusion when it ruled that an employee was not regarded as disabled in <u>Cody v. CIGNA Healthcare of St. Louis, Inc.</u>, 139 F.3d 595, 599 (8th Cir. 1998), <u>cited</u> <u>with approval</u> <u>in</u> <u>Tice</u>, 247 F.3d at 516. There, plaintiff Carol Cody and her immediate supervisor were having difficulty working effectively together. The executive director of the CIGNA office where Ms. Cody worked was told by the CIGNA human resources department to offer her a paid leave of absence with her return contingent upon undergoing a psychiatric evaluation. <u>Cody</u>, 139 F.3d at 597.

Plaintiff Cody argued that a request by her employer that she undergo a mental health examination after displaying unusual behavior established that her employer regarded her as disabled. <u>See</u> <u>Cody</u>, 139 F.3d at 598-599. The Eighth Circuit held:

> A person is regarded as having a such an impairment if others treat her as if she is disabled....An employer's request for a mental evaluation is not inappropriate if it is not obvious that an employee suffers from a disability. *A request for an evaluation is not equivalent to treatment of the employee as though she were substantially impaired.* Employers need

> to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims....

Cody, 139 F.3d at 599 (emphasis added).

In Tice and Cody, plaintiffs sought to demonstrate that their employers regarded them as disabled by relying on the employer's requirement that they each undergo a health evaluation before they would be permitted to return to work. See Tice, 247 F.3d at 516; Cody, 139 F.3d at 599. Both the Third and Eighth Circuits rejected the argument that an employer's requirement for a pre-return health evaluation demonstrated that the employer regards that employee as disabled. See Tice, 247 F.3d at 516; Cody, 139 F.3d at 599.

Here, plaintiff asserts that Nurse Supervisor Koch (1) expressed concern over what she perceived as plaintiff's obsession with Nurse Stettner;[44] (2) advised Plaintiff to seek counseling through defendant's Employee Assistance Program; and (3) handed him a brochure and documents related to the program.[45] These assertions neither show, nor support a reasonable inference, that defendant regarded plaintiff as substantially limited in his ability to work in a broad range of jobs.

In contrast to the mandates issued by the employers in Tice and Cody, plaintiff's Amended Complaint states only that

---

[44]    Amended Complaint ¶ 46.

[45]    Amended Complaint ¶¶ 47-48.

-29-

Nurse Supervisor Koch expressed concern, merely suggested that plaintiff seek counseling, and provided materials related to St. Luke's Employee Assistance Program. If an employer-mandated health examination of an employee is insufficient to establish that the employee is regarded as disabled, it follows logically that Ms. Koch's advice that plaintiff seek counseling and providing him information regarding a possible source of counseling assistance does not support the inference that defendant regarded plaintiff as disabled.[46]

Paragraphs 49 and 50 of plaintiff's Amended Complaint were added and did clarify plaintiff's contention that Supervisor Koch regarded him as suffering from a mental impairment. Despite the alterations to plaintiff's original Complaint,[47] the additional facts averred in the Amended Complaint still fail to state a "regarded as" disability claim under the <u>Twombly</u> pleading standard.

---

[46]     Amended Complaint ¶¶ 46-50.

[47]     Compare Complaint ¶ 44 with Amended Complaint ¶¶ 49-50. Paragraphs 44 through 47 of plaintiff's Amended Complaint track identically with paragraphs 40 through 43 of plaintiff's original Complaint.

Compare Complaint ¶¶ 40-43 with Amended Complaint ¶¶ 44-47. Essentially, plaintiff replaced paragraph 44 of the original Complaint, which stated "Plaintiff...avers, that [Nurse Supervisor] Koch had implied that Plaintiff was mentally ill when she made the comment that he was obsessed with [Nurse] Stettner," with paragraphs 49 and 50 in the Amended Complaint.

Compare Complaint ¶ 44 with Amended Complaint ¶¶ 49-50. Those paragraphs aver that "[Nurse Supervisor] Koch stated to the Plaintiff that 'he had an obsession problem which was a serious mental illness and he should seek help,'" and "Koch told the Plaintiff that [he] was mentally ill because he was obsessed with [Nurse] Stettner. Amended Complaint ¶¶ 49-50.

Specifically, paragraphs 49 and 50 allege that Supervisor Koch stated to plaintiff that "he had an obsession problem which was a serious mental illness and he should seek help." Plaintiff also avers that Ms. Koch told plaintiff that plaintiff was mentally ill because he was obsessed with Nurse Stettner.[48]

In addition to the allegation that Ms. Koch regarded plaintiff as having an impairment, and as noted in my prior Opinion dismissing the original Complaint, the pleadings support the reasonable inference that "working" is the major life activity defendant regarded as affected by plaintiff's impairment.[49]

Nonetheless, plaintiff fails to state a claim for "regarded as" discrimination. Specifically, plaintiff has not pled facts showing or supporting a reasonable inference that defendant perceived plaintiff's impairment as "substantially limiting" his ability to "perform either a broad class of jobs or a broad range of jobs in various classes." See 29 C.F.R. § 1630.2(j)(3)(I); see also Mendez, 2005 WL 2175180, at *5.

Plaintiff's impairment, as perceived by defendant, must substantially limit his ability to perform the major life activity of working. See Law v. Garden State Tanning,

---

[48]    Amended Complaint ¶¶ 49-50.

[49]    September 28, 2009 Opinion of the undersigned at 15.

-31-

159 F.Supp.2d 787, 792 (E.D.Pa. 2001) (McLaughlin, J.)(citing
Kelly v. Drexel University, 94 F.3d 102, 109 (3d Cir. 1996)).

        The absence of facts supporting the inference that
defendant thought plaintiff's obsession would prohibit him from
performing a broad class of jobs or a broad range of jobs across
multiple classes is problematic in light of the particular
impairment plaintiff is allegedly regarded as having- -namely an
obsession with one particular nurse, Nurse Stettner.

        Instead, the facts pled support the reasonable
inference that plaintiff would be capable of working as a
paramedic for another hospital, or in a position with any other
type of business for that matter, where he would not have
occasion come into contact with Nurse Stettner though his work.
As such, plaintiff failed to plead facts sufficient to support an
inference that defendant regarded him as having an impairment
that substantially limited his ability to work.

        Finally, plaintiff attached the Opinion of the United
States Court of Appeals for the Seventh Circuit in Brunker v.
Schwans Home Service, Inc., 583 F.3d 1004 (7th Cir. 2009), to
Plaintiff's Memorandum of Law in Opposition to Defendant's Motion
to Dismiss Amended Complaint.  Plaintiff argues that Brunker
supports his contention that defendant regarded him as
disabled.[50]

---

[50]     Plaintiff's Brief at page 6.

However, <u>Brunker</u> is factually distinguishable from the instant case and does not advance plaintiff's "regarded as" claim. While, as plaintiff correctly notes,[51] it is true that Mr. Brunker's ADA claim against his employer, defendant Schwan's Home Services, was remanded on appeal from a grant of summary judgment because there was "adequate evidence to support a theory that Schwan's regarded Brunker as being disabled in the major life activities of walking, caring for himself, and speaking," <u>Brunker</u>, 583 F.3d at 1008-1009, the facts before the Seventh Circuit, unlike the facts here, supported such a finding.

Importantly, in <u>Brunker</u>, defendant Schwan's was aware that Mr. Brunker suffered from Multiple Sclerosis. Moreover, although the Seventh Circuit determined that Mr. Brunker was not actually disabled under the ADA, Mr. Brunker pled sufficient facts to warrant a reasonable inference that his employer regarded him as disabled. <u>See</u> <u>Brunker</u>, 583 F.3d at 1006-1008.

The Seventh Circuit found that in addition to issuing numerous workplace citations to Mr. Brunker the day before he was scheduled to leave for treatment at the Mayo Clinic, "Schwan's backdated [his] termination notice to before he left for the clinic, evidently hoping to avoid the impression that his apparent condition influenced Schwan's decision to terminate him." <u>Id.</u> at 1008-1009.

---

[51]   Plaintiff's Brief at page 6.

As discussed above, similar facts are not present in the Amended Complaint in the instant case to support a reasonable inference that defendant hospital regarded plaintiff Hobson as suffering an impairment substantially limiting his ability to work.

Because plaintiff's Amended Complaint fails to plead sufficient facts to support a reasonable inference that defendant regarded plaintiff's alleged impairment as substantially limiting his ability to work, see <u>Fowler</u>, 578 F.3d at 212, I grant defendants motion to dismiss and dismiss with prejudice plaintiff's "regarded as" disability claim under the ADA.

## State Claim

As noted above, Count III of plaintiff's Amended Complaint alleges that plaintiff's gender discrimination claim in Count I, and disability claim in Count II, each constitute a violation of the Pennsylvania Human Relations Act. Because the same general standards and analysis applicable to PHRA claims are applicable to Title VII and ADA claims, see <u>Rinehimer v. Cemcolift, Inc.</u>, 292 F.3d 375, 382 (3d Cir. 2002), plaintiff's PHRA claim is also dismissed with prejudice.

## Summary Judgment

Because I granted defendant's motion to dismiss Counts I, II and III and I dismissed plaintiff's Amended Complaint with

prejudice, I also dismiss defendant's alternative motion for summary judgment as moot.

## Attorneys' Fees and Costs

In the Conclusion section of its Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Complaint, or in the Alternative, for Summary Judgment, defendant argues that plaintiff's Amended Complaint is frivolous. Defendant seeks leave to file a Motion for Attorneys' Fees and Costs within twenty days of an Order dismissing plaintiff's Amended Complaint. For the following reasons, I decline to grant defendant leave to file for attorneys' fees and costs.

The standard for awarding attorney fees and costs to a prevailing Title VII plaintiff is different than that for awarding fees and costs to a prevailing defendant. Tai Van Le v. University of Pennsylvania, 321 F.3d 403, 411 (3d Cir. 2003). A district court may in its discretion award attorney's fees and costs to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648, 657 (1978); see EEOC v. L.B. Foster Company, 123 F.3d 746, 751 (3d Cir. 1997).[52]

---

[52]     Explaining when a fee award would be appropriate, the Third Circuit stated:

(Footnote 52 continued):

-35-

The Third Circuit generally treats case law under the ADA and Title VII interchangeably when there is no material difference in the question being addressed.  Thus, the standard for assessing the propriety of awarding fees to a prevailing defendant is the same under Title VII and the ADA.  <u>Fassl v. Our Lady of Perpetual Hope Roman Catholic Church</u>, 2006 WL 709799, at *4 (E.D.Pa. March 13, 2006) (Pratter, J.); <u>see</u> <u>Hughes v. City of Bethlehem</u>, 2009 WL 255859, at *1-2 (E.D.Pa. February 03, 2009) (Stengel, J.); compare 42 U.S.C. §§ 2000e-5(k) with 42 U.S.C. § 12205.

Despite plaintiff's failure to sufficiently plead a cause of action in his Amended Complaint, I do not consider plaintiff's attempt to plead claims under either Title VII or the ADA unreasonable, frivolous and so without foundation to justify exercising my discretion to award attorney fees and costs.

----

(<u>Continuation of footnote 52</u>):

> "Frivolous, unreasonable, or without foundation," in this context, implies "groundless...rather than simply that the plaintiff has ultimately lost his case." "It is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."  Such post hoc reasoning "would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII."  Thus, we have previously stated "It is clear from <u>Christiansburg</u> that attorney's fees [to a prevailing Title VII defendant] are not routine, but are to be only sparingly awarded."

<u>L.B. Foster Company</u>, 123 F.3d at 751 (quoting <u>Christiansburg Garment</u>, 434 U.S. at 421-422, 98 S.Ct. at 700-701, 54 L.Ed.2d at 656-657, and <u>Quiroga v. Hasbro, Inc.</u>, 934 F.2d 497, 503 (3d Cir. 1991))(alteration in original) (internal citations omitted).

Plaintiff's ADA claim fell short based on precise legal requirements of its fourth element.  Specifically, plaintiff pled that Nurse Supervisor Koch stated to him that he had a "serious mental illness."  A reasonable person could believe that this rose to the level of his being "regarded as" disabled even though in light of all plaintiff's averments it is not legally sufficient to sustain a cause of action pursuant to the ADA.

Similarly, plaintiff's Title VII gender discrimination claim cannot be deemed wholly frivolous and without grounds. Plaintiff was not necessarily required to provide support for the inference that he was fired because of his gender by pleading differential treatment of similarly situated female employees, but also had the option to rely on the circumstances pled in the Amended Complaint.  He may have reasonably believed that the facts and circumstances supported such an inference.

While mistaken in his belief that his Amended Complaint remedied the flaws of his original Complaint, plaintiff's claims were not so frivolous, his belief not so unreasonable or without foundation as to warrant an award of attorney fees and costs to defendant.  Therefore, defendant's request for leave to file a motion for attorney fees and costs is denied.

## CONCLUSION

Because plaintiff failed in his second attempt to sufficiently plead either his gender discrimination claim under

Title VII, or his "regarded as" disability claim under the ADA, and therefore failed to sufficiently plead his claim under the Pennsylvania Human Relations Act, defendant's motion to dismiss plaintiff's Amended Complaint is granted and plaintiff's Amended Complaint is dismissed with prejudice. Defendant's alternative motion for summary judgment is dismissed as moot. Finally, defendant's request for leave to file a motion for attorneys' fees and costs is denied.